UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:

                                       Chapter 7

JESSE MORTON HILSEN a/k/a
JESSE HILSEN GRUNENBAUM a/k/a        Case No. 05-30850-ess
JOSEPH GRUNENBAUM a/k/a
JESS GRUNEN,

                  Debtor.

-------------------------------------------------------------x


MEMORANDUM DECISION ON OBJECTIONS TO CERTAIN EXEMPTIONS
CLAIMED BY THE DEBTOR


Appearances:

Avrum J. Rosen, Esq                          Michael T. Sucher, Esq.
The Law Offices of Avrum J. Rosen, PLLC      The Law Offices of Michael T. Sucher, Esq.
38 New Street                                26 Court Street (Suite 2412)
Huntington, New York 11743                   Brooklyn, New York 11242
Attorneys for Richard E. O'Connell           Attorneys for Jesse Morton Hilsen
  as Chapter 7 Trustee

Steven H. Newman, Esq.
Katsky Korins LLP
605 Third Avenue
New York, New York 10158
Attorneys for Dr. Joan Margolis f/k/a/ Dr. Joan Packles,
  Chuck Rockwell, Ltd. and Doug Landon, Ltd.

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court are the claims of Jesse Morton Hilsen, also known as Jesse Hilsen

Grunenbaum, Joseph Grunenbaum, and Jess Grunen, the debtor in this Chapter 7 bankruptcy

case (the "Debtor"), in his amended schedules, that his rights in the Chuck Rockwell Trust (the

"Chuck Rockwell Trust") are exempt, and the objections brought by Richard E. O'Connell, the

Chapter 7 Trustee in this case (the "Trustee"), and Joan Beth Packles, also known as Joan

Margolis ("Dr. Margolis"), Chuck Rockwell, Ltd., and Doug Landon, Ltd. (together, the

"Margolis Objectors"), to the Debtor's claimed exemptions of his rights in the trust.  The Debtor

claims his exemptions pursuant to Section 522(l) of Title 11 of the United States Code (the

"Bankruptcy Code"), and the Trustee and the Margolis Objectors (the "Objecting Parties") bring

their objections to the Debtor's claimed exemptions pursuant to Rule 4003(b) of the Federal

Rules of Bankruptcy Procedure.  The Objecting Parties also argue that the Debtor's rights in the

Chuck Rockwell Trust arise from a fraudulent conveyance and the Debtor cannot claim an

exemption in a fraudulent trust instrument.

## Jurisdiction

This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b)

and 157(b)(2)(B).

## Background

This matter, and the state and federal litigation that precedes it, has a long and complex

history that need not be repeated in full here.  This history includes the Debtor's prior Chapter 7

bankruptcy case in the Southern District of New York, which was filed in 1987 as a voluntary

case under Chapter 11, converted to a case under Chapter 7 in 1988, and finally concluded in

2008.  *In re Jesse M. Hilsen*, Case No. 87-11261 (Bankr. S.D.N.Y.).  It also includes federal

criminal proceedings under the Child Support Recovery Act of 1992, as amended by the

Deadbeat Parents Punishment Act of 1998, brought in 2003 in the Southern District of New

York.  *United States v. Jesse Hilsen*, Case No. 03-00919 (S.D.N.Y.).  In that action, the Debtor

entered a guilty plea to one count of failure to pay past-due court-ordered child support to his

former spouse, Rita Hilsen, and was sentenced to a term of time served and one year of

supervised release.  *United States v. Jesse Hilsen*, Case No. 03-00919 (S.D.N.Y.), Docket No. 43

(Judgment in a Criminal Case).  Rita Hilsen is a creditor in this bankruptcy case.  Finally, the

prior proceedings include many years of contested matrimonial proceedings between the Debtor

and Rita Hilsen, including proceedings to determine and collect support and maintenance

payments, in New York State Court.

     For purposes of this decision, certain background matters are reviewed below.

*The Chuck Rockwell Trust*

     On August 17, 1991, Frances Packles established the Chuck Rockwell Trust.  Docket No.

71, Exh. A (Trust Agreement) at 15.  The trust is scheduled to "terminate upon the death of the

survivor of [Dr. Margolis], Jesse Morton Hilsen, Marc Johnson, Aaron Johnson, and Michelle

Packles . . . ."  Docket No. 71, Exh. A (Trust Agreement) ¶ FIRST.  The Chuck Rockwell Trust

designates Frances Packles as the grantor, Dr. Margolis and Marc Johnson as trustees, and Dr.

Margolis and the Debtor as beneficiaries.  Docket No. 71, Exh. A (Trust Agreement) at 1.

     The Chuck Rockwell Trust provides the Debtor with a conditional right to receive trust

income and conditional rights relating to the trust's real property.  As to the Debtor's conditional

income rights, Paragraph FIRST of the Chuck Rockwell Trust provides that the trustees may, but

are not required to, distribute income generated by the trust principal to Dr. Margolis, the

Debtor, and the grantor's issue "in such amount or amounts (whether equal or unequal) as the Trustees shall deem advisable . . . ."  Docket No. 71, Exh. A (Trust Agreement) ¶ FIRST. Paragraph SECOND of the Chuck Rockwell Trust provides that "any permissible income beneficiary of the trust shall have the right to demand and withdraw from the principal of the trust fund for each calendar year in which a gift or gifts to this trust are made" a certain amount of property related to the value of the those gifts.  Docket No. 71, Exh. A (Trust Agreement) ¶ SECOND.

As to the Debtor's conditional right to use and to veto the sale of the trust's real property, Paragraph FIFTH provides that "[t]he Trustees are authorized and empowered to permit any permissible income beneficiary . . . to use any real property owned by the trust, free of rent or other charges."  Docket No. 71, Exh. A (Trust Agreement) ¶ FIFTH.  The Chuck Rockwell Trust also grants the Debtor a conditional veto power over the trustees' ability to sell the real property owned by the trust.  Under Paragraph FIFTH, "[a]t any time that [Dr. Margolis] shall not be acting as a trustee hereunder, the Trustees shall not sell any real property owned by the trust . . . without the prior written consent of Jesse Morton Hilsen, if he is then living and not under a disability."  Docket No. 71, Exh. A (Trust Agreement) ¶ FIFTH.

*The Debtor's Financial Affidavit in the Criminal Case*

On July 29, 2003, a criminal indictment was filed against the Debtor in the United States District Court for the Southern District of New York in *United States v. Jesse Hilsen*.  *United States v. Jesse Hilsen*, Case No. 03-00919 (S.D.N.Y.), Docket No. 1 (Indictment).  In that action, the Debtor was charged with one count of unlawful failure to pay court-ordered child support payments to Rita Hilsen for his son and daughter, as required by orders of the Family Court of

the State of New York, dated August 3, 1988, July 6, 1992, and June 1994.  *See United States v. Jesse Hilsen*, 2005 WL 3434778, at *1 (S.D.N.Y. Dec. 14, 2005).

On October 12, 2004, the district court denied the Debtor's motion for leave to submit a financial affidavit *ex parte* and under seal in support of his request for appointed counsel. *United States v. Jesse Hilsen*, 2004 WL 2284388 (S.D.N.Y. Oct. 12, 2004).  On September 21, 2004, the Debtor completed a financial affidavit and indicated that he did not "own real estate, stocks, bonds, notes, automobiles, or other valuable property."  Docket No. 69, Exh. B (CJA Form 23 executed by Jesse Hilsen).  In particular, the Debtor did not list any rights under the Chuck Rockwell Trust as an asset.  *Id.*

On October 18, 2004, the Debtor filed a request for the appointment of Allan P. Haber as his attorney, which was approved and entered by the court on December 8, 2004.  *United States v. Jesse Hilsen*, Case No. 03-00919 (S.D.N.Y.), Docket No. 19 (CJA Form 20).  On December 28, 2005, the court entered a judgment against the Debtor providing for a sentence of time served and one year of supervised release, and a payment of a fine, for disbursement to Rita Hilsen, in the amount of $161,975.  *United States v. Jesse Hilsen*, Case No. 03-00919 (S.D.N.Y.), Docket No. 43 (Judgment in a Criminal Case).  *See also United States v. Jesse Hilsen*, 2005 WL 3434778, at *4-5.

*The Trustee's Adversary Proceeding Against the Margolis Defendants and Others*

On April 13, 2006, the Trustee filed a complaint in an adversary proceeding against Batya Tov Hilsen, Dr. Margolis, Chuck Rockwell, Ltd., Doug Landon, Ltd., and Optimum Resources, Inc. (the "Adversary Proceeding"), seeking avoidance and recovery of certain alleged fraudulent conveyances made to Dr. Margolis, Chuck Rockwell, Ltd., and Doug Landon, Ltd.

4

(the "Margolis Defendants") and others, as well as injunctive relief, a declaratory judgment, and turnover of estate property.  *O'Connell v. Packles*, Adv. Pro. 06-1249, Docket No. 1 (Complaint) ¶ 1.

After discovery, an extended period of negotiation and court-ordered mediation, the Trustee and the Margolis Defendants reached an agreement to settle the Trustee's claims.  One creditor, Rita Hilsen, objected to the settlement.  The Trustee, the Margolis Defendants, and Rita Hilsen attempted to resolve the objections to the settlement and this led to several modifications of the settlement agreement.  The Court held an evidentiary hearing on February 27, 2008, at which the Trustee and Rita Hilsen appeared in person and by counsel and were heard, and the Court heard testimony from the Trustee.  Further hearings were held and a proposed order approving the settlement agreement was submitted to the Court on December 16, 2008.  On March 17, 2009, the Court entered an memorandum decision and order approving the settlement.

*The Debtor's Claimed Exemptions and the Objections to His Exemptions*

On October 13, 2005, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  Docket No. 1 (Petition).  At the time the Debtor commenced this case, he was not represented by counsel.  *Id.  The* Debtor later retained counsel to represent him, and on January 4, 2007, Michael T. Sucher, Esq., filed an appearance in the bankruptcy case.  Docket No. 47 (Notice of Appearance and Request for Notice).

The Debtor filed Schedules A, B, and C with his petition, which set forth his scheduled real property and personal property and his claimed exemptions.  Petition, Schedule A (Official Form B6A), Schedule B (Official Form B6B), Schedule C (Official Form B6C).  The Debtor's Schedule A lists a "life estate (left to the Debtor in Mother's Estate)" in "183 acres in Sullivan

County NY plus 20 acres adjoining with house paid for by Nina Hilsen to Packles Trust." Petition, Schedule A (Official Form B6A).  The value listed for this asset is "0."  *Id.*

The Debtor's Schedule B lists an interest in an "oral trust from Debtor's mother in care of [Dr. Margolis] to provide for food and shelter for Debtor in the future."  Petition, Schedule B (Official Form B6B).  The value listed for this asset is $150,000.  *Id.*  Schedule B also lists the Debtor's interest in household goods and furnishings, and states that certain pieces of furniture are in the possession of Dr. Margolis.  *Id.*  Schedule B also lists an interest in certain art objects, antiques and other collectibles, including a number of these art objects and collectibles in the possession of Dr. Margolis.  *Id.*  The Debtor's Schedule B also lists an interest in certain jewelry including a Rolex watch, and two Citroen automobiles.  *Id.*

The Debtor's original Schedule C does not list any rights in the Chuck Rockwell Trust as exempt property.  Petition, Schedule C (Official Form B6C).  On April 20, 2007, the Debtor, by counsel, amended his Schedule C to claim, as exempt personal property of unknown value, his "Benefits due as beneficiary under a certain Trust (the 'Chuck Rockwell Trust') made August 17, 1991," and served notice of this amendment on the Trustee and his creditors.  Docket No. 55, Amended Schedule C and Affidavit of Service.

On May 11, 2007, the Trustee and the Margolis Objectors filed objections to the Debtor's claimed exemptions relating to the Chuck Rockwell Trust.  Docket No. 67 (Motion Objecting to Debtor's Claimed Exemption in Benefits Under a Certain Trust (the "Trustee's Objection"));  Docket No. 69 (Objection to Certain Exemptions Claimed by the Debtor in the Debtor's Amended Schedules (the "Margolis Objection")).

On May 22, 2007, an initial hearing was held on the Trustee's Objection at which

6

counsel for the Trustee appeared and was heard.  Docket Entry dated May 22, 2007.  On June 15, 2007, the Debtor, by counsel, amended his Schedule B to add "Benefits due Debtor as beneficiary under a certain Trust (the 'Chuck Rockwell Trust') made August 17, 1991," and filed an Affirmation in Opposition to Motions Objecting to Debtor's Amended Exemptions (the "Affirm. in Opp.").  Docket Nos. 70, 71.

On June 18, 2007, a hearing was held on the Trustee's Objection and the Margolis Objection, at which counsel for the Debtor, counsel for the Trustee, and counsel for the Margolis Objectors appeared and were heard.  Docket Entry dated June 18, 2007.  On July 2, 2007, the Debtor filed a Supplemental Affirmation in Opposition to Motions Objecting to Debtor's Amended Exemptions (the "Supp. Affirm. in Opp.").  Docket No. 73.  On July 16, 2007, the Trustee filed a Response to Debtor's Supplemental Affirmation in Opposition to the Trustee's Motions Objecting to Debtor's Claim of Exemption In Benefits Under a Certain Trust (the "Trustee's Response").  Docket No. 74.  On July 17, 2007, the Margolis Objectors filed a Supplemental Statement in Support of Objection to Certain Exemptions Claimed by the Debtor in the Debtor's Amended Schedules (the "Margolis Supp. Objection").  Docket No. 76.

On February 27, 2008, a hearing was held on the Trustee's Objection and the Margolis Objection, at which counsel for the Trustee and counsel for the Margolis Objectors appeared and were heard.  The Debtor did not appear in person or by counsel.  At the close of the hearing, based on the entire record, the Court sustained the objections in part and overruled the objections in part as set forth on the record, and directed the parties to settle a proposed order on thirty days' notice.  Docket Entry dated February 27, 2008.  No objections to the entry of the proposed order were filed.

7

**Discussion**

Upon the commencement of a bankruptcy case, a bankruptcy estate is created, which is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Section 522(l) of the Bankruptcy Code provides that a debtor must file a list of the property that the debtor claims as exempt. 11 U.S.C. § 522(l). *See* 11 U.S.C. § 522(b). Bankruptcy Rules 4003(a) and 1007(c) provide that a debtor must list property claimed as exempt on schedules of assets filed with his bankruptcy petition. FED. R. BANKR. P. 4003(a), 1007(c). And Bankruptcy Rule 1009(a) permits a debtor to amend these schedules at any time during the bankruptcy case. FED. R. BANKR. P. 1009(a).

Bankruptcy Rule 4003 sets forth the procedure for a party in interest to object to an exemption claimed by a debtor and the allocation of the burden of proof as follows:

> A party in interest may file an objection to the list of property claimed as exempt only within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later. . . .
>
> . . .
>
> In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed.

FED. R. BANKR. P. 4003(b), (c).

Here, the record shows that the Debtor filed timely original schedules and provided notice to the Trustee and creditors when he filed his amended Schedule C and Schedule B, and the Trustee and the Margolis Objectors filed timely objections to the Debtor's claimed exemptions. The Objecting Parties bear the burden of proving that the Debtor's asserted

exemption of his rights under the Chuck Rockwell Trust is not properly claimed.[1]

Section 541(a)(1) of the Bankruptcy Code defines property of the estate broadly to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. 541(a)(1). As one commentator notes, "[i]t is this central aggregation of property that promotes the effectuation of the fundamental purposes of the Bankruptcy Code. . . . Congress' intent to define property of the estate in the broadest possible sense is evident from the language of the statute . . ." 5 COLLIER ON BANKRUPTCY ¶ 541.01 (15th ed. rev. 2007).

But Section 541(c)(2) of the Bankruptcy Code places a boundary on property of the estate in accordance with applicable nonbankruptcy law so that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2). *See Taft v. O'Connell (In re Taft)*, 184 B.R. 189, 190 (Bankr. E.D.N.Y. 1995). The question of whether a debtor has an interest in property that passes to the bankruptcy estate upon the commencement of the case, and the scope and extent of any applicable exemptions, may be determined by the bankruptcy court and is informed by applicable state law. *See Butner v. United States*, 440 U.S. 48, 54-55 (1979).

A spendthrift trust is defined as "[a] trust that prohibits the beneficiary's interest from being assigned and also prevents a creditor from attaching that interest; a trust by the terms of which a valid restraint is imposed on the voluntary or involuntary transfer of the beneficiary's interest." BLACK'S LAW DICTIONARY 1552 (8th ed. 2004). *See* RESTATEMENT (SECOND) OF TRUSTS § 152(2) (1959); 2A Austin W. Scott, Jr., THE LAW OF TRUSTS § 151 (4th ed. 2001).

---

[1] The Objecting Parties also argue that the Debtor is precluded from claiming the exemptions at issue by operation of the doctrine of judicial estoppel. *See* pp. 19-24, *infra*.

Under New York law, "all express trusts are presumed to be spendthrift unless the settlor expressly provides otherwise." *Regan v. Ross*, 691 F.2d 81, 86 n.14 (2d Cir. 1982).

Section 7-1.5(a) of New York's Estates Powers & Trusts Law ("EPTL") provides that a trust is a spendthrift trust unless the instrument creating the trust expressly grants its beneficiaries the power to transfer their rights:

> The right of a beneficiary of an express trust to receive the income from property and apply it to the use of or pay it to any person may not be transferred by assignment or otherwise unless a power to transfer such right, or any part thereof, is conferred upon such beneficiary by the instrument creating or declaring the trust.

N.Y. Est. Powers & Trusts § 7-1.5(a)(1).

A spendthrift trust under New York law, therefore, is characterized by the kind of "restriction on the transfer of a beneficial interest of the debtor" that Section 541(c)(2) of the Bankruptcy Code contemplates and makes enforceable in a bankruptcy case. For these reasons, unless some other provision of law applies, a beneficiary's rights in a valid spendthrift trust are not property of a bankruptcy estate.

### *The Debtor's Conditional Income Rights Under the Chuck Rockwell Trust*

As described above, the Chuck Rockwell Trust gives the Debtor a conditional right to receive income. Specifically, the trust provides that the trustees may, but are not required to, distribute income generated by the trust principal to Dr. Margolis, the Debtor, and the Grantor's issue "in such amount or amounts (whether equal or unequal) as the Trustees deem advisable . . . ." Docket No. 71, Exh. A (Trust Agreement) ¶ FIRST. *See* Docket No. 71, Exh. A (Trust Agreement) ¶ SECOND. *See also* p. 3, *supra*.

The Trustee argues that the Debtor's income rights under the Chuck Rockwell Trust are

10

property of the estate under Section 541 and not exempt under Section 542(b) and (c).  Trustee's

Response ¶ 4.  The Trustee argues that while a valid spendthrift trust would be excepted from

property of the estate under Section 541(c), the Chuck Rockwell Trust allows the Debtor to

control the *res* of the trust, so that "the Trust Agreement is not a valid spendthrift trust and is

therefore not exempt."  Trustee's Response ¶ 5.

The Trustee further argues that even if the trust principal is exempt, then by operation of

CPLR 5205(d)(1), "at a very minimum, 10 percent of the Debtor's income is available for the

creditors of the Estate."  Trustee's Response ¶ 10 and n.1.  That section provides that "ninety per

cent of the income or other payments from a trust the principal of which is exempt under [CPLR

§ 5205(c)]" is exempt from application to satisfy a money judgment.  N.Y. C.P.L.R. 5205(d)(1).

The Margolis Objectors argue that the Debtor may not exempt any interest in the Chuck

Rockwell Trust because "pursuant to the express terms of the Chuck Rockwell Trust, the Debtor

has no pecuniary interests in the Chuck Rockwell Trust."  Margolis Objection ¶ 7.  The Margolis

Objectors also argue that they are prejudiced by the Debtor's claimed exemption because under

the Settlement Agreement, the Debtor's rights in the Chuck Rockwell Trust are "terminated

and/or conveyed" to Dr. Margolis.  Margolis Objection ¶ 6.  And as discussed below, the

Margolis Objectors further argue that the Debtor should be barred from claiming an exemption

in his rights under the Chuck Rockwell Trust by the doctrine of judicial estoppel.  Margolis

Objection ¶¶ 9-10, 12-13; Margolis Supp. Objection ¶ 15.  *See* pp. 19-24, *infra*.

The Debtor argues that he is an income beneficiary provided for in Paragraph FIRST of

the Chuck Rockwell Trust.  Supp. Affirm. in Opp. ¶ 5.  He argues that his income rights are not

alienable because the Chuck Rockwell Trust does not expressly grant him the power to transfer

his future interest in trust income.  Supp. Affirm. in Opp. ¶ 8.  The Debtor also argues that because his income rights under the Chuck Rockwell Trust are not expressly alienable, pursuant to EPTL Section 7-1.5(a)(1), they are "exempt from the reach of creditors, or sale by a bankruptcy Trustee."  Supp. Affirm. in Opp. ¶ 7.

Here, the record shows that Paragraph FIRST and Paragraph SECOND of the Chuck Rockwell Trust provide the Debtor with a conditional right to income.  Affirm. in Opp., Exh. A (Trust Agreement), ¶ FIRST, ¶ SECOND.  The record also shows that the Chuck Rockwell Trust does not provide the Debtor with the power to transfer this right.  *Id.*  Viewed another way, the Chuck Rockwell Trust provides the Debtor with conditional income benefits, but not with transferable rights to those benefits.

For these reasons, and based on the entire record, the Objecting Parties have not shown that the Debtor's asserted exemption in his conditional right to income under the Chuck Rockwell Trust is not properly claimed, but the Objecting Parties have shown that ten percent of the Debtor's income benefits under the Chuck Rockwell Trust is not included within that exemption and is available to the Debtor's Chapter 7 estate.[2]

*The Debtor's Conditional Right To Use Real Property Under the Chuck Rockwell Trust*

As described above, the Chuck Rockwell Trust gives the Debtor a conditional right to use

---

[2]  The Trustee also argues that under CPLR Section 5205(c)(4), a creditor with an unpaid support obligation may collect on that obligation from trust assets that would otherwise be beyond the reach of judgment creditors under CPLR Section 5205(c)(1).  Trustee's Response ¶ 10 n.1.  He also argues that he may step into the shoes of Rita Hilsen, as a creditor with an unpaid support obligation.  *Id.*  The rights of a trustee under Section 544 of the Bankruptcy Code are broad, and encompass those of a judgment lien creditor or a bona fide purchaser, but they do not permit the Trustee to step into the shoes of a creditor with an unpaid support obligation.  *See, e.g.,* 11 U.S.C. § 544(a)(1), (a)(3).

real property owned by the trust.  Specifically, the trust provides that the trustees may, but are

not required to, "permit any permissible income beneficiary . . . to use any real property owned

by the trust, free of rent or other charges."  Docket No. 71, Exh. A (Trust Agreement) ¶ FIFTH.

*See* p. 3, *supra.*  The Chuck Rockwell Trust does not give the Debtor the right to transfer or

alienate his conditional right to use the real property.

The Trustee argues that the Debtor's conditional right to use real property owned by the

Chuck Rockwell Trust amounts to a life estate in that property, and notes that the Debtor's

Schedule A lists a "'life estate (left to Debtor in Mother's Estate)' in 183 Acres in Sullivan

County, New York plus 20 acres adjoining with house paid for by Nina Hilsen to Packles Trust."

Trustee's Response ¶ 1.  The Trustee notes that the Debtor did not amend his Schedule A, so

"[n]o exemption is claimed in the life estate which, as listed by the Debtor, derives from the

[Rockwell] Trust."  Trustee's Obj. ¶ 8.

The Trustee also argues that the Debtor's conditional right to use this real property, taken

together with his conditional right to veto a sale of the property, establishes that the Debtor "has

control over the *res* of the trust and that this is not a spendthrift trust."  Trustee's Response ¶ 7.

*See* Trustee's Response ¶ 6.  And the Trustee adds that under the Settlement Agreement, he

transferred his rights in the Chuck Rockwell Trust to the defendants in the Adversary

Proceeding, so that the Debtor's claimed exemptions in the transferred rights is prejudicial to

those defendants.  Trustee's Obj. ¶ 7.

As noted above, the Margolis Objectors argue that the Debtor may not claim an

exemption in any rights in the Chuck Rockwell Trust because the terms of the trust do not

provide the Debtor with any pecuniary interest in those rights, and because under the Settlement

Agreement, those rights were "terminated and/or conveyed" to Dr. Margolis.  Margolis

Objection ¶¶ 6-7.  The Margolis Objectors also argue that the Debtor's claimed exemption

should be barred by the doctrine of judicial estoppel.  Margolis Objection ¶¶ 9-10, 12-13;

Margolis Supp. Objection ¶ 15.  *See* pp. 19-24, *infra*.

The Debtor argues that under Paragraph FIFTH of the Chuck Rockwell Trust, he has a

conditional right to use real property owned by the trust, but does not have a life estate in that

property.  Supp. Affirm. in Opp. ¶¶ 10, 11.  A life estate, he argues, is more than a "right to

occupy," which is personal in nature and nontransferable.  Supp. Affirm. in Opp. ¶¶ 12-13.  "At

best," the Debtor argues, he has "a conditional right of occupancy, which appears to be solely in

the discretion of the Trustees. . . .  As such, it cannot be transferred by the Debtor, and thus

cannot become property of the Debtor's estate under 11 U.S.C. §541."  Supp. Affirm. in Opp. ¶¶

16, 18.

"The law is clear that a life estate and a right to occupancy are not the same. . . . A life

estate is more than a right to occupancy."  *In re Estate of Strohe*, 2004 WL 2903616, at *2 (N.Y.

Sur. Ct. Nassau County 2004) (citations omitted).  A life estate includes a full bundle of rights,

including alienability, and it is property of the estate even if it is contingent.  5 COLLIER ON

BANKRUPTCY ¶ 541.05[1] (15th ed. rev. 2007) ("Under the Code, the life estate becomes

property of the estate even if the right was contingent and not vested as of the date of the

commencement of the case.  There is no exception in section 541 excluding contingent property

interests.").

The granting of a life estate may be indicated by the particular words used in a trust.

"Traditionally, the 'descriptive words denoting a life tenancy are "use and occupation"'" *In re*

*Estate of Sauer*, 194 Misc. 2d 634, 636, 753 N.Y.S.2d 318, 320 (N.Y. Sur. Ct. Nassau County 2002) (citations omitted). *See also Rizzo v. Mataranglo*, 16 Misc. 2d 20, 21, 135 N.Y.S.2d 92, 93 (N.Y. City Mun. Ct. 1953) (the absence of the words "use and occupation" precluded the granting of a life estate).

The granting of a life estate may also indicated by the conveyance of the full bundle of rights associated with the "use and occupation" of the real property. Courts have found that these rights include the right to exclude others from possession, the right to lease and collect rents, and under certain circumstances, the right to force a sale of the real property, as well as the responsibility for the maintenance of the real property. *See Estate of Abouchar*, 2006 N.Y. Misc. LEXIS 6366 at *3 (N.Y. Sur. Ct. Suffolk County 2006); *In re Estate of Strohe*, 2004 WL 2903616, at *2; *In re Estate of Sauer*, 194 Misc. 2d at 636.

Finally, while a life estate is a property right, a conditional right of occupancy is more closely akin to a personal right rather than a property right. As the Surrogate's Court found, "the distinction is critical since a right of occupancy is a personal privilege only and does not carry with it the added rights and responsibilities of a life tenancy." *In re Estate of Strohe*, 2004 WL 2903616, at *2 (citations omitted). Such a personal right, unlike a full property right, is generally not transferable. *See Jetton v. University of the South*, 208 U.S. 489, 500 (1908) (a tax-exempt university may not transfer its tax-exempt status to its lessee); *In re Little & Ives Co.*, 262 F. Supp. 719, 722 (S.D.N.Y. 1966) (a trustee may not transfer the debtor's contract right to use copyrighted material); *In re McCourt*, 12 B.R. 587, 590 (Bankr. S.D.N.Y. 1981) (a trustee may not exercise the debtor's personal right of election to take his share of his deceased spouse's estate); *In re Brand*, 251 B.R. 912, 915-16 (Bankr. S.D. Fla. 2000) (unexercised personal rights,

15

unlike property rights, are not property of the estate).

Here, the record shows that Paragraph FIFTH of the Chuck Rockwell Trust provides the Debtor with a conditional right to use any real property owned by the trust.  Docket No. 71, Exh. A (Trust Agreement) ¶ FIFTH.  The record also shows that as with the Debtor's conditional income benefits, the Chuck Rockwell Trust does not provide the Debtor with the power to transfer this right.  *Id.*

The record further shows that the Debtor's conditional right to use any real property owned by the trust amounts to less than the full bundle of rights in property that accompanies a life estate.  Those rights include alienability, the right to exclude others from possession, the right to lease and collect rents, the right to force a sale of the property under certain circumstances, and the responsibility for the maintenance of the property.  *See* pp. 14-15, *supra.* Nor does the Chuck Rockwell Trust use the terms "use and occupation" that are commonly associated with a life estate.

For these reasons, and based on the entire record, the Objecting Parties have not shown that the Debtor's asserted exemption in his conditional right to use any real property owned by the Chuck Rockwell Trust is not properly claimed.

*The Debtor's Conditional Right To Veto a Sale of Real Property Owned by the Chuck Rockwell Trust*

As described above, the Chuck Rockwell Trust gives the Debtor a conditional right to veto a sale of the real property owned by the trust.  Specifically, the trust provides that "at any time that [Dr. Margolis] shall not be acting as a trustee hereunder, the Trustees shall not sell any real property owned by the trust . . . without the prior written consent of Jesse Morton Hilsen, if he is then living and not under a disability."  Docket No. 71, Exh. A (Trust Agreement) ¶ FIFTH.

16

The Trustee argues that the Debtor's right to veto a sale of the trust's real property provides the Debtor with "control over the *res* of the trust" and therefore is property of the estate. Trustee's Response ¶ 7. The Trustee argues that the provision granting the Debtor a conditional veto over the sale of trust property shows that "the Trust Agreement was created for the benefit of the Debtor and, specifically, to ensure the Debtor has control over the ownership of the property, in the event that Dr. Margolis no longer acts as a trustee." Trustee's Response ¶ 6.

And the Margolis Objectors argue that the Debtor may not claim an exemption in any rights in the Chuck Rockwell Trust because the trust does not provide him with any pecuniary interest in those rights, and because they are "terminated and/or conveyed" to them in the Settlement Agreement. Margolis Objection ¶¶ 6, 7. The Margolis Objectors also argue that the Debtor's claimed exemption should be barred by the doctrine of judicial estoppel. Margolis Objection ¶¶ 9-10, 12-13; Margolis Supp. Objection ¶ 15. *See* pp. 19-24, *infra*.

The Debtor argues that his conditional right to veto a sale of real property owned by the Chuck Rockwell Trust constitutes a power, and since powers are distinct from property rights under common law, they are not property of the estate. Supp. Affirm. in Opp. ¶¶ 10, 20-22. The Debtor acknowledges that "general powers of appointment, presently exercisable . . . sometimes called Beneficial Powers" may be property of the estate, but that powers of appointment that are subject to a condition that has not occurred are not property of the estate. Supp. Affirm. in Opp. ¶¶ 23-25. The Debtor notes that the condition in Paragraph FIFTH, that Dr. Margolis is not acting as a trustee, has yet to occur. Supp. Affirm. in Opp. ¶ 27.

And the Debtor notes that while a "beneficial power" may be property of the estate, a "power in trust" – that is, a power that benefits persons other than the grantor of the power – is

not property of the estate.  Supp. Affirm. in Opp. ¶ 30.  The Debtor asserts that because his power in Paragraph FIFTH benefits not only him but also the other trust beneficiary, it is a "power in trust."  Supp. Affirm. in Opp. ¶ 31.

Powers with respect to property are distinct from rights in the property itself.  EPTL Secction 10-2.1 defines a power as "an authority to do any act in relation to property."  N.Y. EST. POWERS & TRUSTS § 10-2.1.  As the Surrogate's Court found, "[s]eparation of a power over property from title or interest therein is well established in our law."  *In re Estate of Hart*, 177 Misc. 183, 184, 30 N.Y.S.2d 147, 149 (N.Y. Sur. Ct. N.Y. County 1941).  A power that is personal in nature may be exercised only by its holder.  For these reasons, unless some other provision of law applies, such a power is not property of a bankruptcy estate.

A general power of appointment that is presently exercisable, by contrast, may be reached by creditors and be property of the estate.  N.Y. EST. POWERS & TRUSTS § 10-7.2. Under EPTL Section 10-3.2(b), "[a] power of appointment is general to the extent that it is exercisable wholly in favor of the donee, his estate, his creditors or the creditors of his estate." N.Y. EST. POWERS & TRUSTS § 10-3.2(b).  At the same time, EPTL Section 10-3.3(d) limits powers of appointment by declaring them "postponed" where they are not presently exercisable: "A power of appointment is postponed if it is exercisable by the donee only after the expiration of a stated time or after the occurrence or non-occurrence of a specified event."  N.Y. EST. POWERS & TRUSTS § 10-3.3(d).

Here, the record shows that the Debtor's conditional right to veto a sale of real property owned by the Chuck Rockwell Trust is a power with respect to that real property that is not presently exercisable.  The record also shows that the Chuck Rockwell Trust does not provide

18

the Debtor with a presently exercisable power of appointment, because the Debtor's rights are "postponed" under EPTL Section 10-3.3(d). As a consequence, the Debtor's conditional right to veto a sale of trust property may not presently be reached by creditors.

For these reasons, and based on the entire record, the Objecting Parties have not shown that the Debtor's asserted exemption in his conditional right to veto the sale of any real property owned by the Chuck Rockwell Trust is not properly claimed. For the same reasons, and based on the entire record, the Objecting Parties have not shown that the Debtor's conditional right to veto the sale of any real property owned by the Chuck Rockwell Trust, taken together with his other rights with respect to that property, give him control that is presently exercisable over the *res* of the trust.

### Whether the Debtor Is Precluded from Claiming an Exemption in His Rights Under the Chuck Rockwell Trust by the Doctrine of Judicial Estoppel

The Trustee argues that the Debtor should be estopped from claiming an exemption in his rights under the Chuck Rockwell Trust because he did not list an interest in the trust in his original schedules, and because he did not disclose that interest in the financial affidavit that he filed, under penalty of perjury, in the criminal case. Trustee's Response ¶ 11. The Trustee asserts that "[t]he timing of the Debtor's claim to an exemption raises the question of whether the Debtor has claimed the exemption in bad faith." Trustee's Response ¶ 12.

The Margolis Objectors argue that the Debtor should be precluded by the doctrine of judicial estoppel from asserting an exemption in his rights under the Chuck Rockwell Trust because he omitted these assets in his original schedules, which he swore were true and correct under penalty of perjury, and only first listed them in his Amended Schedules. Margolis Objection ¶¶ 2-3, 12. *See* Docket No. 12 (Amended Schedule B). They assert that the Debtor's

omission was intentional and in bad faith since the Debtor must have been aware of his asserted

interest in the Chuck Rockwell Trust when he commenced this bankruptcy case.  Margolis

Objection ¶¶ 9-10.

The Margolis Objectors also argue that the Debtor should be judicially estopped from

claiming an exemption in his rights under the Chuck Rockwell Trust because he did not disclose

an interest in the Chuck Rockwell Trust in the financial affidavit that he filed in the criminal

case, *United States v. Hilsen.*  Margolis Objection ¶¶ 4, 12; Margolis Supp. Objection ¶¶ 1-6.

They further argue that since the Debtor's rights in the Chuck Rockwell Trust are part of the

consideration in the proposed settlement of the Adversary Proceeding, "the Debtor's claim of

exemption at this late date is prejudicial" to them.  Margolis Objection ¶ 6.

The Margolis Objectors urge that the doctrine must be invoked when a party contradicts a

statement made under oath and adopted by a previous tribunal, and argue that a final judgment is

not required for judicial estoppel to apply.  Margolis Supp. Objection ¶¶ 9-13 (citing cases).

And in all events, they note that a judgment was entered in the criminal case.  Margolis Supp.

Objection ¶ 8 and Exh. E (Judgment in a Criminal Case).

The Debtor argues that a judgment is required for judicial estoppel to apply.  Affirm. in

Opp. ¶ 24.  The doctrine of judicial estoppel, he argues, applies only "'where a party to an action

has secured a judgment in his or her favor by adopting a certain position and then has sought to

assume a contrary position in another action simply because his [or her] interests have

changed.'"  *Id.* (quoting *Matter of One Beacon Ins. Co. v. Espinoza*, 37 A.D.3d 607, 608, 830

N.Y.S.2d 287, 289 (N.Y. App. Div. 2d Dep't 2007)).

The Debtor argues that the circumstances surrounding the filing of his original schedules

are "indicative of his good faith attempt to honor his obligation of full disclosure."  Affirm. in

Opp. ¶ 20.  The Debtor notes that he amended his Schedule B to include his interest in the Chuck

Rockwell Trust and states that he has never received a statement of the "nature, extent or amount

of the Trust *res*" from the trustees.  Affirm. in Opp. ¶ 11.  *See* Affirm. in Opp. ¶ 18, 22.  He

states that "prior to reading the Trustee's objections, it was unclear what the *res* of this Trust

consists of at present, or who are presently the Trustees of this Trust."  Affirm. in Opp. ¶ 9.  The

Debtor states that any inconsistencies in these filings should be excused because he made several

attempts in his schedules to give notice of his trust interest and was incarcerated when he filed

his schedules.  Affirm. in Opp. ¶¶ 18-20.  Finally, the Debtor argues that Dr. Margolis, as a

trustee of the Chuck Rockwell Trust, knew of the Debtor's interest in the trust and cannot claim

"surprise" at the Debtor's assertion of that interest.  Affirm in Opp. ¶ 21.

 The Debtor also argues that the order directing appointment of counsel in the criminal

case was not a final judgment and that the Margolis Objectors "can point to no judgment

occasioned by the petition herein or the prior (allegedly) erroneous affidavit, save for the

appointed representation itself."  Affirm. in Opp. ¶ 25.  *See* Supp. Affirm. in Opp. ¶ 34.  The

Debtor notes that "the three types of benefits [claimed by the Debtor under the Chuck Rockwell

Trust] would not likely have swayed the District Court to rule other than it did on the counsel

motion before it" because each of the conditional benefits under the trust is either unlikely to

occur, or not property at all.  Supp. Affirm. in Opp. ¶ 35.  *See* Supp. Affirm. in Opp. ¶¶ 36-38.

 As the Supreme Court has observed, "judicial estoppel 'is an equitable doctrine invoked

by a court at its discretion . . . .'"  *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quoting

*Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)).  The purpose of judicial estoppel is "'to

protect the integrity of the judicial process,' by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment . . . .'" *New Hampshire*, 532 U.S. at 749-50 (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982) and *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993)).  Judicial estoppel is not a mandatory doctrine, and "'the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle . . . .'" *New Hampshire*, 532 U.S. at 750 (quoting *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982)).

The Supreme Court identified several factors that courts should consider in determining whether judicial estoppel should apply:

> First, a party's later position must be "clearly inconsistent" with its earlier position.  Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled."  Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," and thus poses little threat to judicial integrity.  A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

> In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel.  Additional considerations may inform the doctrine's application in specific factual contexts.

*New Hampshire*, 532 U.S. at 750-51 (citations omitted).  The Second Circuit has recognized that "judicial estoppel does not apply when the first statement resulted from 'a good faith mistake or an unintentional error.'"  *Mitchell v. Washingtonville Cent. School Dist.*, 190 F.3d 1, 6 n.2 (2d Cir. 1999) (citation omitted).

It also seems clear that these considerations must be viewed in the context of whether the

22

earlier position was asserted with the benefit of advice of counsel. Where the position giving rise to the claim of judicial estoppel was advanced by an unrepresented person, some additional restraint may be appropriate before the judicial estoppel is invoked. *See Lerman v. Board of Elections*, 232 F.3d 135, 139-40 (2d Cir. 2000).

Here, the record shows that the Debtor did not fully disclose his interest in the Chuck Rockwell Trust in his financial affidavit in the criminal case and in his original schedules filed in this bankruptcy case. But the record does not show that the Debtor's statements in his financial affidavit were adopted by the court in connection with the entry of the judgment in the criminal case. And even if those statements may be deemed to have been adopted by the court or reflected in the judgment, the record suggests that the Debtor's interest in the Chuck Rockwell Trust was not of tangible value to him, because his benefits under that trust were conditional or unrealized. That is, the record does not establish that a different result would have been obtained in the criminal case if the Debtor had identified the interests in the Chuck Rockwell Trust that he now seeks to exempt here. This is so regardless of whether judicial estoppel requires the entry of a judgment, or whether a judgment was entered based on the Debtor's financial affidavit.

The record also shows that in this bankruptcy case, the Debtor amended his schedules to identify and claim as exempt his interests in the Chuck Rockwell Trust shortly within a few months after he retained counsel to represent him. That amendment was permitted under Bankruptcy Rule 1009(a), and this Court has not entered a judgment based on those schedules.

Looking to the considerations identified by the Supreme Court in *New Hampshire*, this situation does not appear to be one where a party asserted a "'clearly inconsistent'" position in a later case after:

[the party] succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of [the later position] would create 'the perception that either the first or the second court was misled,' . . . . [and where the Debtor] would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire*, 532 U.S. at 750-51 (quoting *Edwards*, 690 F.2d at 598).[3]

Finally, the Debtor prepared his original schedules while incarcerated and without the benefit of assistance of counsel.  As the Second Circuit has stated, "[s]ince most pro se plaintiffs lack familiarity with the formalities of pleading requirements, we must construe pro se complaints liberally, applying a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel."  *Lerman*, 232 F.3d at 139-40.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

For these reasons, and based on the entire record, the Objecting Parties have not shown that the Debtor is barred by the doctrine of judicial estoppel from asserting an exemption in his rights under the Chuck Rockwell Trust.

## Conclusion

Based on the entire record, and for the reasons set forth on the record and stated herein, the objections to certain exemptions claimed by the Debtor in benefits from the Chuck Rockwell Trust are sustained in part, to the extent that the Debtor's exemption in future income benefits under the Chuck Rockwell Trust does not apply to ten percent of such income benefits that he receives.  The objections are overruled in all other respects.   An order in accordance with this

---

[3]  It bears note that Dr. Margolis, one of the Margolis Objectors, appears to be among the trustees who determines whether the Debtor shall receive any benefit in respect of his conditional right to income and conditional right to use property owned by the Chuck Rockwell Trust.  And so long as Dr. Margolis is living, the Debtor's conditional right to veto the sale of real property owned by the trust may not be exercised.  Docket No. 71, Exh. A (Trust Agreement) ¶ FIRST, ¶ FIFTH.

Memorandum Decision will be entered simultaneously herewith.

Dated:  Brooklyn, New York
        March *17*, 2009

                           ___*s/Elizabeth S. Stong*_____
                           ELIZABETH S. STONG
                           UNITED STATES BANKRUPTCY JUDGE